# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

ANTHONY HOOKS,

          Petitioner,

     v.                          CASE NO.  09-3090-JWL

RAYMOND "RAY"
ROBERTS, et al.,

          Respondents.

### MEMORANDUM AND ORDER

Anthony Hooks, a state prisoner, filed this pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. He claims (1) his state sentence violated <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000) because his criminal history was not submitted to the jury and proved beyond a reasonable doubt; (2) his right to effective assistance of counsel under the Sixth and Fourteenth Amendments was violated during plea proceedings when his counsel mistakenly advised he would receive a much shorter sentence; and (3) his due process rights were violated when the state trial court failed to appoint counsel and hold an evidentiary hearing on his claim of ineffective assistance of counsel. Respondents have filed an Answer and Return, and the time for filing a Traverse has expired. The court has thoroughly reviewed the Petition and attachments, Memorandum in Support of Petition, Answer and Return, pertinent state court records, and relevant legal authority. For

1

reasons that follow, the court determines Mr. Hooks has failed to demonstrate that the state court decision in his case was contrary to or an unreasonable application of "clearly established Federal Law", and therefore denies the petition.

## I.   BACKGROUND

The factual and procedural background is summarized from the Brief of Appellant filed in the Kansas Court of Appeals (KCA) on behalf of Mr. Hooks by his appointed counsel, petitioner's Memorandum in Support (Doc. 3), and the state court records provided by Respondents.  On October 15, 2005, the State charged Mr. Hooks with one count of aggravated battery and one count of possession of cocaine.  He waived his right to a preliminary hearing, and his jury trial commenced on February 13, 2006.  Before all the State's evidence was presented, the State and Hooks reached a plea agreement, in which Hooks agreed to plead no contest to both counts.  On February 15, 2006, he entered a no contest plea to both counts as charged.  In exchange for Hooks' plea, the State agreed to recommend sentences of the low number in the appropriate Kansas Sentencing Guidelines gridbox, that the sentences be concurrent, and that Hooks could argue for any sentence[1].

---

[1]     The court summarized the agreement at the plea proceeding:

As I understand the plea agreement, Mr. Disney, is in exchange for the defendant pleading no contest to Counts 1 and 2, you're going to recommend that the defendant receive the low number in the sentencing guidelines box for each count and those counts run

Before accepting Mr. Hooks' plea, the trial judge thoroughly and repeatedly questioned him to insure he understood the rights he would be relinquishing and that his decision to plead was made competently, freely, and voluntarily. Additionally, the judge advised Mr. Hooks that the court could impose a term of incarceration "from 38 to 172 months" on the aggravated battery charge and "from 10 to 42 months" on the cocaine possession charge. Mr. Hooks affirmed that he understood the court could impose these sentences and make them consecutive "even though the State is recommending concurrent" and "regardless of what's in the plea agreement." The court asked Mr. Hooks whether he had read the "Defendant's Acknowledgment of Rights and Entry of Plea" from "cover to cover". Mr. Hooks responded he and his attorney had read and discussed the document, it was his decision to sign it, he had heard the plea agreement recited in court, and he understood and had no questions about the agreement. The judge reminded Hooks that the "Court is not a party to that agreement and it therefore is not bound by it." The judge also asked Mr. Hooks if he was satisfied with his counsel's representation, to which he responded, "Yes, sir." Hooks responded negatively to the court's inquiry as to whether anyone had promised him anything or threatened him to

---

concurrently and the defendant will be free to argue for a different sentence.

The State and defense counsel acknowledged this recitation of the agreement was correct. See Transcript of Plea Proceeding, at 5-7.

get him to plead. Finally, the court accepted the evidence previously presented by the State at trial as the factual basis for the plea, and pronounced Mr. Hooks guilty.

At the time of the plea, Mr. Hooks believed his criminal history score would be F. Had that assumption been correct, the low number in the sentencing gridbox for his aggravated battery offense would have been 52 months. A presentence investigation was conducted, however, and the PSI report indicated Hooks was in criminal history category A. The low number in the category A gridbox was 154 months[2]. Hooks' criminal history score included the conversion of 3 person misdemeanors for use as 1 person felony. He filed objections to his criminal history and a motion for downward and durational departure. The State was required to produce proof of each challenged criminal history item. After petitioner's many objections were resolved at a hearing, his criminal history score remained A. The court overruled the departure motion, and on April 13, 2006, sentenced Mr. Hooks to serve 154 months in prison.

---

[2]      Kansas law provides that a sentence is to be determined by combining the offense severity level with the criminal history score. Under the Kansas Sentencing Guidelines (KSGA), given petitioner's offense severity level of IV and his criminal history score of A, the sentencing judge was to select a sentence from a gridbox with a range of 154-162-172. K.S.A. 21-4711(a) provides: "Every three prior adult convictions . . . of class A and class B person misdemeanors in the offender's criminal history . . . shall be rated as one adult conviction . . . of a person felony for criminal history purposes." This statute applied to "bundle" 3 of Hooks' misdemeanor battery convictions into a person felony. Under the KSGA, "prior convictions discovered after the plea has been accepted by the court" may not be used to enhance the severity level of the present crime of conviction, but "shall be counted in the determination of the criminal history of the offender." K.S.A. 21-4707(c)(4).

4

The following day, Mr. Hooks appealed his sentence, and was appointed different counsel on direct appeal. The KCA affirmed his sentence[3] in an unpublished Memorandum Opinion filed April 27, 2007. The Kansas Supreme Court denied review on June 25, 2007. In May 2006, with his direct appeal pending, Mr. Hooks filed a pro se "Motion to Withdraw Plea and/or Correct Illegal Sentence." In this motion, he claimed the plea agreement was breached by the State and his plea was not voluntary because the agreement was for a sentence not to exceed 47 months, and that the State had unlawfully enhanced three misdemeanor convictions into a single, additional person felony. On June 15, 2006, the trial judge summarily denied the motion "for reasons stated in the State's Brief"[4] and finding "Deft

---

[3]     The KCA delineated two issues raised on direct appeal: (1) "the sentencing court violated Apprendi, and (2) the sentencing court violated State v. Robinson, 281 Kan. 538, 132 P.3d 934 (2006), by ordering reimbursement of attorney fees without first considering ability to pay. The KCA affirmed the sentence, and reversed the reimbursement order.

[4]     The reasons stated in the Brief were:

Contrary to defendant's assertion, the State did not revoke or breach the plea agreement. In the plea agreement, the State agreed to recommend the low number for each count, concurrent. The State did not, however, agree to recommend a sentence of forty-seven months. Given defendant's criminal history and the severity level of his offenses, the low number in the appropriate grid box was, in fact, 154 months in prison. Further, the plea agreement informed defendant the Sentencing Guidelines Act would apply at his sentencing, and that a presumptive sentence would be determined by combining the severity level of his crime and his criminal history. Again, the State did not promise to recommend a specific sentence; rather, it agreed to recommend the low number on each count. Defendant did, in fact, receive the low numbers, concurrent.

(Defendant) filed a motion objecting to his criminal history as listed on the PSI, as he denied having any person felonies; this court denied the motion . . . . In the instant motion, defendant argues the State should not have been allowed to convert three person misdemeanors into a person felony. Defendant's claim fails pursuant to the express terms of K.S.A. 21-4711(a).

entered into plea knowingly and voluntarily." Petitioner did not appeal this decision.

In January 2007, petitioner filed a second pro se Motion to Withdraw Plea, claiming his counsel was ineffective. In support, he alleged counsel had advised him to plead under the false assumption that his sentence would be computed with no criminal history or that petitioner had no prior felonies, and that his plea would be in exchange for a sentence not to exceed 47 months. This motion was summarily denied by the trial judge who stated: "The court no longer has jurisdiction to hear this matter, but if it did, the court would not allow Deft to withdraw his plea for reasons previously given." Petitioner appealed to the KCA, and was appointed counsel. The KCA affirmed in <u>State v. Hooks</u>, 191 P.3d 362, 2008 WL 3916006, App.No. 98596 (Kan.App.Ct., Aug. 22, 2008). The Kansas Supreme Court denied review on January 22, 2009.

The facts underlying petitioner's offenses of conviction have no bearing on his claims. Additional facts, which are relevant to his claims, are discussed in connection with each separate claim.

## II. STANDARDS OF REVIEW UNDER § 2254

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") govern the court's review of petitioner's claims. Under § 2254, as amended by the AEDPA, the

---

See "Response to Defendant's Motion to Withdraw Plea", Case No. 05-CR-2804.

Court may not grant federal habeas corpus relief unless the state court's adjudication of the claims either (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. See Williams v. Taylor, 529 U.S. 362, 404-05 (2000)(citing 28 U.S.C. § 2254(d)).

The Supreme Court has determined that the "contrary to" and "unreasonable application" clauses of 28 U.S.C. § 2254(d)(1) have independent meanings. Bell v. Cone, 535 U.S. 685, 694 (2002). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] on a set of materially indistinguishable facts." Williams, 529 U.S. at 412-13.

"Under the 'unreasonable application' clause, . . . the relevant inquiry is not whether the state court's application of federal law was incorrect, but whether it was 'objectively unreasonable'." Anderson v. Mullin, 327 F.3d 1148, 1153 (10th Cir.)(citing Williams, 529 U.S. at 409), cert. denied, 540 U.S. 916 (2003); House v. Hatch, 527 F.3d 1010, 1018 (10th Cir. 2008), cert. denied, ___U.S.___, 129 S.Ct. 1345, 173 L.Ed.2d 613 (Feb. 23,

2009)(citing <u>Maynard v. Boone</u>, 468 F.3d 665, 669 (10th Cir. 2006), <u>cert</u>. <u>denied</u>, 549 U.S. 1285 (2007). "[T]he Supreme Court has concluded that although this standard does not require all reasonable jurists to agree that the state court was unreasonable, an unreasonable application constitutes more than an incorrect application of federal law." <u>House</u>, 527 F.3d at 1019 (citing <u>Williams</u>, 529 U.S. at 377, 410); <u>see</u> <u>Lockyer v. Andrade</u>, 538 U.S. 63, 75 (2003)(It is not enough that a federal habeas court, in its independent review of the legal question, is left with a firm conviction that the state court was erroneous.). "[O]nly the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." <u>House</u>, 527 F.3d. at 1019 (citing <u>Maynard</u>, 468 F.3d at 671.).


**III. ANALYSIS**

At the outset, the court finds an evidentiary hearing is not appropriate in this case because Mr. Hooks has not shown that "his allegations, if true and not contravened by the existing factual record, would entitle him to habeas relief." <u>Anderson v. Attorney General of Kan.</u>, 425 F.3d 853, 858 (10th Cir. 2005).


***A. PROCEDURAL DUE PROCESS CLAIM***

Petitioner claims his federal constitutional rights were violated because the state court failed to hold a full evidentiary

hearing on his ineffective assistance of counsel claim, and failed to appoint counsel to represent him in the state post-conviction proceedings. The KCA rejected these claims, citing Kansas Supreme Court cases holding an evidentiary hearing is not required in all cases, "is limited to those instances in which the defendant's motion raised substantial issues of fact or law," and should be denied when the files and records conclusively show that the defendant is entitled to no relief." Hooks, 191 P.3d 362, at *2. (citing State v. Jackson, 255 Kan. 455, 459, 874 P.2d 1138 (Kan. 1994)). Jackson also held "the appointment of counsel is only necessary if the motion to withdraw a plea reveals facts which, if true, show manifest injustice." Id. (citing Jackson, 255 Kan. at 461).

Petitioner is not entitled to relief on these claims under the "contrary to" clause, because he has identified no United States Supreme Court precedent, and the court is aware of none, that clearly established his right to an evidentiary hearing or counsel in state post-conviction proceedings. See Barknell v. Crouse, 468 F.3d 684, 688 (10th Cir. 2006). In fact, the U.S. Supreme Court has specifically ruled that the Sixth Amendment right to effective assistance of counsel does not attach to state proceedings for post-conviction relief. Pennsylvania v. Finley, 481 U.S. 551, 555 (1987). "The absence of clearly established federal law is dispositive under § 2254(d)(1)." House, 527 F.3d at 1015. Nor is

the state court's adjudication an "unreasonable application of clearly established federal law as determined by the Supreme Court" since controlling authority is to the contrary. The Tenth Circuit has consistently held that an attempt by a petitioner to challenge state "post-conviction procedures on their face and as applied to him [fails] to state a federal constitutional claim cognizable in a federal habeas proceeding." Steele v. Young, 11 F.3d 1518, 1524 (10th Cir. 1993); see also Sellers v. Ward, 135 F.3d 1333, 1339 (10th Cir.)(State court's refusal to grant a post-conviction hearing was not cognizable on federal habeas corpus because the constitutional error raised focuses only on the State's post-conviction remedy and not the judgment providing the basis for incarceration.), cert. denied, 525 U.S. 1024 (1998); Beeman v. Ortiz, 161 Fed.Appx. 767, 768-69 (10th Cir.)(affirming district court's rejection of petitioner's challenge to the state court's denial of a post-conviction evidentiary hearing because a claim of constitutional error directed at state post-conviction proceedings was not cognizable on federal habeas review)(citing Sellers, 135 F.3d at 1339), cert. denied, 549 U.S. 858 (2006). The court concludes that the state court's adjudication of petitioner's procedural challenges to his state post-conviction proceedings were consistent with, rather than contrary to or an unreasonable application of, clearly established federal law.

## B. *APPRENDI CLAIM*

Mr. Hooks generally asserts his sentence is unconstitutional because it was based upon his prior convictions. Specifically, he claims his criminal history could not be used to enhance his sentence unless the prior convictions were submitted to and found by a jury beyond a reasonable doubt. He cites <u>Apprendi</u> and <u>Blakely v. Washington</u>, 542 U.S. 296 (2004), and argues that <u>Almendarez-Torres v. United States</u>, 523 U.S. 224 (1998) was wrongly decided. In the state courts, this issue was decided adversely to petitioner based on Kansas Supreme Court precedent, which cited <u>Apprendi</u> and <u>Almendarez-Torres</u>. <u>See</u> <u>State v. Ivory</u>, 273 Kan. 44, 45-46, 41 P.3d 781 (2002).

In <u>Almendarez-Torres</u>, the Supreme Court held that the Constitution does not require the government to charge or prove to a jury the existence of prior convictions" in order to use the information as a sentencing factor. <u>Almendarez-Torres</u>, 523 U.S. at 235, 243. The Court reasoned that recidivism "is a traditional, if not the most traditional, basis for a sentencing court's increasing an offender's sentence," and "as typical a sentencing factor as one might imagine," <u>Id</u>. at 243, 230; <u>see</u> <u>United States v. Moore</u>, 401 F.3d 1220, 1223 (10th Cir. 2005); <u>United States v. Pineda-Rodriguez</u>, 133 Fed.Appx. 455, 457-58 (10th Cir. May 4, 2005). As the Tenth Circuit explained in <u>Hunter v. Werholtz</u>, 505 F.3d 1080, 1082 (10th Cir. 2007):

Hunter relies heavily on (<u>Apprendi</u>), asserting that <u>Apprendi</u> requires that the state charge in an indictment and prove to a jury-beyond a reasonable doubt-the facts related to a prior conviction. Far from proving his point, however, <u>Apprendi</u> forecloses Hunter's argument. 530 U.S. at 476 ("*Other than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proven beyond a reasonable doubt.")(emphasis added). As noted above, <u>Booker</u> recently reaffirmed this recidivism exception to the Court's recent Sixth Amendment jurisprudence. <u>See</u> 543 U.S. at 244. And, of course, this court continues to apply the exception. <u>United States v. Moore</u>, 401 F.3d 1220, 1223-24 (10th Cir. 2005); <u>see also</u> <u>United States v. Delacruz-Soto</u>, 414 F.3d 1158, 1164 n. 2 (10th Cir. 2005)(footnote omitted, citations shortened).

<u>Id</u>. at 1081-82. The Tenth Circuit has consistently held that <u>Shepard</u>, <u>United States v. Booker</u>, 534 U.S. 220 (2005), <u>Blakely</u>, and <u>Apprendi</u> have left undisturbed the holding of <u>Almendarez-Torres</u>. <u>See</u> <u>Williams</u>, 410 F.3d at 402; <u>Moore</u>, 401 F.3d at 1221, 1224 (Until the Supreme Court overrules <u>Almendarez-Torres</u>, courts are bound to find that the exception in <u>Apprendi</u> based on <u>Almendarez-Torres</u> and extended to the guidelines in <u>Booker</u> remains good law.); <u>Pineda-Rodriquez</u>, 133 Fed.Appx. at 458 FN5. It follows that the trial court's use of petitioner's prior convictions in calculating the length of his sentence was neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent. Rather, it was legally consistent with <u>Apprendi</u>, <u>Blakely</u>, and <u>Almendarez-Torres</u>.

**C. *Ineffective Assistance of Counsel***

Petitioner claims he "received ineffective assistance of counsel when his counsel advised him to plead guilty (sic) to the crimes as charged in the midst of trial" based upon incorrect criminal history information. A claim of ineffective counsel is a mixed question of law and fact, subject to the AEDPA "unreasonable application of clearly established Federal Law" standard[5]. Cook v. McKune, 323 F.3d 825, 832 (10th Cir. 2003).

In Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court established a two-prong test for evaluating claims of ineffective assistance of counsel. The Court has also expressly held that "the (Strickland) test applies to challenges to guilty pleas based on ineffective assistance of counsel." Hill v. Lockhart, 474 U.S. 52, 58 (1985); see United States v. Carter, 130 F.3d 1432, 1442 (10th Cir. 1997). Under Strickland, Mr. Hooks must first demonstrate that his counsel's performance "fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688; see Fairchild v. Workman, 579 F.3d 1134, 1140 (10th Cir. 2009). In evaluating counsel's performance, the court must apply "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." Strickland, 466 U.S. at 689; see Boyd v. Ward, 179 F.3d 904, 914 (10th Cir. 1999), cert. denied, 528 U.S. 1167 (2000); Bullock v. Carver, 297 F.3d 1036,

---

[5] This claim also is considered only under the unreasonable application clause because Mr. Hooks does not challenge the state court's factual findings, or cite "on point" clearly established federal law to which the state court's adjudications were "contrary".

1044 (10th Cir. 2002). "For counsel's performance to be constitutionally ineffective, it must have been completely unreasonable, not merely wrong." Strickland 466 U.S. at 689.

Second, Mr. Hooks "must show that (counsel's) deficient performance prejudiced the defense. . . ." Id. at 687; Le v. Mullin, 311 F.3d 1002, 1024-25 (10th Cir. 2002), cert. denied, 540 U.S. 833 (2003). Under this prong, Mr. Hooks must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 1025 (quoting Strickland, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Bullock, 297 F.3d at 1044. "In the context of guilty pleas, the first half of the Strickland v. Washington test is nothing more than a restatement of the standard of attorney competence." Hill, 474 U.S. at 58-59. "[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty [or, in this case, nolo contendere] and would have insisted on going to trial." Id.; Le, 311 F.3d at 1025 (quoting id.). The court "may address the performance and prejudice components in any order, but need not address both if [petitioner] fails to make a sufficient showing of one." Cooks v. Ward, 165 F.3d 1283, 1292-93 (10th Cir. 1998).

In petitioner's case, the KCA did not specifically cite or set

14

forth the Strickland standards.  Even though a state-court decision

cites no federal law, it is accorded AEDPA deference if the state

court rejected the claim under a standard either identical to or

more favorable to the applicant than the federal standard.  Patton

v. Mullin, 425 F.3d 788, 795 (10th Cir. 2005).  Respondents

correctly point out that the Kansas courts generally apply the

Strickland standard to ineffective assistance of counsel claims.

The KCA in petitioner's case clearly applied a standard

substantially similar to that in Strickland.  Accordingly, the

KCA's adjudication of Mr. Hooks' ineffective assistance of counsel

claim is considered under  AEDPA's deferential standard, and this

court is limited to determining whether that adjudication was an

unreasonable application of Strickland and Hill.

    While the Supreme Court has set forth the foregoing general

standards for ineffective assistance of counsel claims, that Court

"has not squarely addressed under what conditions an attorney's

erroneous sentence estimate rises to the level of constitutionally

deficient performance."  See Kidd v. Bruce, No. 03-3354-JWL, 2004

WL 303549 (D.Kan. Feb. 13, 2004); Gardner v. McKune, No. 06-3149-

KHV, 2007 WL 852645 (D.Kan. Mar. 21, 2007), appeal dism'd, 242

Fed.Appx. 594 (10th Cir. Aug. 2, 2007), cert. denied, ___U.S.___,

128 S.Ct. 2093, 170 L.Ed.2d 826 (2008).  The Hill Court, in

applying the Strickland standard to a claim of erroneous attorney

advice as to parole eligibility, found it unnecessary to determine

whether there may be circumstances under which such misadvice may be deemed constitutionally ineffective assistance of counsel. This was because the Court found petitioner's allegations were insufficient to satisfy the prejudice prong under <u>Strickland</u>. <u>Hill</u>, 474 U.S. at 60.

However, earlier decisions from the Supreme Court have suggested a tolerance for miscalculations made by counsel in good-faith. For example, the Supreme Court held that when a criminal defendant waives trial by entering a plea, he assumes "the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts." <u>McMann v. Richardson</u>, 397 U.S. 759, 770 (1970). Thus, the Court found the requirement that a defendant intelligently enter a plea agreement does not require that "all advice offered by the defendant's lawyer withstand retrospective examination in a post-conviction hearing." <u>Id</u>. The Supreme Court has also cautioned federal courts that even in circumstances where an attorney erred, "[i]t will generally be appropriate for a reviewing court to assess counsel's overall performance throughout the case in order to determine whether the 'identified acts or omissions' overcome the presumption that counsel rendered reasonable professional assistance." <u>Kimmelman v. Morrison</u>, 477 U.S. 365, 386 (1986); <u>United States v. Smith</u>, 10 F.3d 724, 728 (10th Cir.

1993)(per curiam).

Unlike the Supreme Court, the Tenth Circuit has more specifically examined under what circumstances an attorney's erroneous advice can invalidate a plea agreement. Generally, the Circuit has held that a plea may be rendered involuntary when an attorney materially misinforms the defendant of the consequences of the plea. Laycock v. State of N.M., 880 F.2d 1184, 1186 (10th Cir. 1989). On the other hand, they have squarely held that "although constitutionally deficient performance by defense counsel may render a plea involuntary", a "miscalculation or erroneous sentence estimation by defense counsel is not a constitutionally deficient performance rising to the level of ineffective assistance of counsel." United States v. Williams, 118 F.3d 717, 718 (10th Cir.)(quoting United States v. Gordon, 4 F.3d 1567, 1570 (10th Cir. 1993), cert. denied, 510 U.S. 1184 (1994)), cert. denied, 522 U.S. 1033 (1997). In a case similar to petitioner's, they rejected the argument that counsel was ineffective because he failed to conduct an independent investigation into his client's prior criminal history where the defendant failed to inform counsel of his history. U.S. v. Rhodes, 913 F.2d 839, 844 (10th Cir. 1990), cert. denied, 498 U.S. 1122 (1991). In Rhodes, the Circuit reasoned:

> The reasonableness of an attorney's decision not to
> conduct an investigation is directly related to the
> information the defendant has supplied. Rhodes faults
> his attorney for failing to conduct an independent
> investigation into his criminal history, but Rhodes, by
> his own admission, failed to inform counsel of five of

17

> his six prior criminal convictions. . . . Rhodes does
> not contend that he gave his attorney any indication . .
> . which would have led his attorney to question the
> accuracy or completeness of his statements or to believe
> that an independent investigation was warranted. A claim
> of ineffective assistance of counsel cannot be charged
> when the essential and foundational information required
> to trigger such an investigation is withheld from the
> defendant's attorney by the defendant himself.

Id. In other factually analogous situations, where counsel miscalculated or erroneously estimated the length of a defendant's sentence, the Tenth Circuit has consistently characterized such error as a miscalculation that neither renders a plea involuntary nor counsel's performance deficient. See, e.g., Wellnitz v. Page, 420 F.2d 935 (10th Cir. 1970)(finding plea voluntary even though counsel informed defendant he would "get 25 years" and defendant was actually sentenced to 100 years); Braun v. Ward, 190 F.3d 1181 (10th Cir. 1999), cert. denied, 529 U.S. 1114 (2000); United States v. Zambrano-Sanchez, 182 F.3d 934, 1999 WL 339694, at *3 (10th Cir. 1999)(counsel allegedly estimated a sentence of 5 to 6½ years and the defendant received 151 months); Fields v. Gibson, 277 F.3d 1203, 1213-14 (10th Cir.)(trial counsel's projections characterized as erroneous sentence estimate did not invalidate plea where trial counsel never told petitioner they had a promise or guarantee that by pleading guilty he would not receive a death sentence), cert. denied, 537 U.S. 1023 (2002).

The allegations made by Mr. Hooks in his federal petition to support his claim of ineffective assistance of counsel are not

identical to those presented in his state court motion. In federal court, they are as follows. Hooks believed his criminal history would either not be considered in calculating his sentence, or his score was an F. When petitioner's counsel, Bradley Sylvester, informed him of the State's proffer, Sylvester told petitioner "since petitioner's criminal history score would be 'F' and the sentences for the two crimes would be concurrent, petitioner would serve no more than 52 months." Petitioner believed his counsel was apprised of the facts and applicable law, so he "followed his advice and accepted the plea." Counsel failed to advise him that his misdemeanor convictions would be "consolidated and used to greatly enhance his criminal history." Petitioner also cites his counsel's remarks at sentencing: that Mr. Hooks "really thought he was a criminal history F"; "I don't think anybody knew he was a criminal history score of A at the time the plea was entered"; and "[m]y client would not have been seeking a plea to criminal history score A." See Transcript of Sentencing (hereinafter T.Sent.) at 15, 26. His attorney also stated:

> I think this thing goes down as the silliest, the dumbest plea a defendant has ever done in light of what his criminal history score would be because there was no reason in the world why anybody would ever plead. Well, I'm sorry, I guess there are cases that might be appropriate, but to simply get a ten month sentence running concurrent to 154 is not the deal of a lifetime.

Id. at 26. Mr. Hooks acknowledges that he ended up with a 154-

month sentence due to his "true criminal history score[6]."

The KCA expressly considered the merits of Hooks' claim that his counsel provided ineffective assistance. Respondents contend that the state court began it's analysis with the prejudice prong, and finding no prejudice, denied petitioner's claim without considering the competence of his plea counsel. However, this court is not so convinced. In the KCA's written opinion, they expressly found a lack of prejudice in one paragraph. In the next paragraph, they found, with little or no discussion: "[f]urthermore, Hooks fails to show Sylvester rendered ineffective assistance of counsel." Hooks, 191 P.3d 362 at *3. This court proceeds to consider whether petitioner has satisfied both the Strickland prongs for this reason, and because the alleged discrepancy between the sentence Mr. Hooks believed he would receive and that actually imposed is substantial.

In determining petitioner's claim, which was ineffective assistance of counsel, the state appellate court found:

_____

[6] In addition to these factual allegations, petitioner argues he is entitled to relief under Esslinger v. Davis, 44 F.3d 1515 (11th Cir. 1995). He is not entitled to relief based upon this authority for several reasons. First, Eleventh Circuit case law is not controlling in this court. In addition, Esslinger is inapposite in that it involved a sentence imposed pursuant to Alabama's habitual felon statute, under which the minimum sentence was ninety-two years. The facts are further distinguishable in that petitioner's counsel in Esslinger failed to inform the Alabama judge at the plea colloquy that the petitioner had any prior felony though he believed his client had one, and as a result the court erroneously informed the petitioner that his minimum sentence would be ten years. Furthermore, Esslinger was decided prior to passage of the AEDPA, and the opinion is devoid of any reference to federal habeas corpus standards of limited review such as those applicable to petitioner's case. Moreover, the Eleventh Circuit limited its holding to the unusual facts and expressly did "not hold that an attorney who recommends a blind plea inherently fails to perform as required by the Sixth Amendment." Id. at 1530.

In the present case, attorney Sylvester admitted at sentencing that when Hooks entered his plea he believed the criminal history score would be F and that the plea agreement contemplated a score of F and a sentence of 52 months. Sylvester was also of the opinion the State did not realize Hooks' score was actually an A. Sylvester also thought Hooks would probably not have pled had he known the history score was an A.

Id. at *2-*3. Nevertheless, the KCA concluded that "Hooks' failed anticipation does not equate to manifest injustice where he was cognizant of the possibility of a higher sentence." Id. (citing McGoldrick v. State, 33 Kan.App.2d 466, 466-68, 470-72, 104 P.3d 416, rev. denied, 279 Kan. 1007 (2005). The KCA cited Kansas precedent holding a state prisoner's plea was knowing and voluntary despite a mutual mistake as to his criminal history score. Hooks, 191 P.3d 362, at *2 (citing State v. Haskins, 262 Kan. 728, 732, 942 P.2d 16 (1997). They cited another state case holding the "trial court is obligated to sentence defendant on his true score although there is mutual mistake as to true criminal history." State v. Baldwin, 28 Kan.App.2d 550, 552, 18 P.3d 977, rev. denied 271 Kan. 1039 (2001). The KCA found "substantial evidence Hooks entered his plea with knowledge and awareness of the potential consequences." Hooks, 191 P.3d 362, at *3.

Before this court petitioner has alleged few actual facts to show his counsel's advice during plea proceedings was incompetent or prejudicial. Instead, he relies mainly upon his pro se legal arguments. A habeas petitioner seeking relief in federal court under § 2254 must allege facts showing he is entitled to such

relief.  Essentially, the only significant factual allegations in Mr. Hooks' federal petition are: (1) he believed at the time he entered his plea that his criminal history score would be F or would not be used at all in determining his sentence, (2) his plea counsel did not do an independent examination into his criminal history and debunk this mistaken belief, and (3) instead, his counsel advised him that since his criminal history score would be F he would receive a sentence of no more than 52 months.

The record supports Mr. Hooks' allegation that he believed his criminal history score was F at the time he entered his plea. However, the record also clearly indicates Mr. Hooks either failed to recognize or simply did not recall his own criminal history.  It shows he denied its existence to his attorney as well, up until it was proven at the hearing on his objections.  At the time of his plea, Mr. Hooks was 29 years old and had completed the 12th grade. Contrary to his belief, the record indicates he had a very significant criminal history[7].  The transcript of the hearing on his objections shows he unsuccessfully objected to every person felony and misdemeanor, generally on grounds that he did not think

_____

[7]     His presentence investigation report contained 36 entries.  The summary of "Criminal History Conviction or Adjudications Prior to Sentencing" indicated Hooks has 2 adult person felonies, 7 adult nonperson felonies, 5 adult person misdemeanors, and 6 adult nonperson misdemeanors.  The conversion of 3 of his person misdemeanors added a third adult person felony.  A couple of the entries challenged were stricken by the court, and some were "unscoreable."

they were his or thought they had been dismissed[8].  It thus appears
Mr. Hooks misled his attorney regarding his criminal history, or at
least failed to give Mr. Sylvester any reason to believe his client
had a significant criminal history.

Before this court, Mr. Hooks acknowledges his belief was
mistaken, but he does not reveal how or when he developed this
serious misconception.  His statement that Mr. Sylvester advised
his criminal history score would be F and thus he would receive a
sentence of no more than 52 months is not supported by any
underlying facts.  Nor has he provided an affidavit from Mr.
Sylvester or other objective evidence.  The KCA did not find Mr.
Sylvester had advised Mr. Hooks that his score was F or his
sentence would be 52 months.  They found only that Mr. Sylvester

---

[8]     At the objections hearing, defense counsel stated Hooks had told him
"the batteries do not exist or are not him", and though "the State has shown it
with journal entries" which "normally is sufficient", he is "still telling me he
does not have these priors."  T.Sent. at 2-3.  The court asked defense counsel
to specify which entries they were objecting to, and defense counsel responded
"all the misdemeanor persons and felony persons."  After Mr. Hooks was shown a
journal entry or informed of the name of his former counsel, he would then recall
the conviction.  Eventually the court stated to Mr. Hooks:

> [Y]our memory is a little faulty as to these things.  You verbally
> indicated you did not remember, and then when shown most of these
> documents, you said, oh, yeah, after all that is me.  And so
> unfortunately, I can't really rely upon your memory. . . .  As I
> look at entry 16, the certified copy from the Municipal Court
> record, you remember the case.  You are just saying that the
> disposition of the case was different than what you remember.  You
> thought the case was dismissed, but the record indicates that you
> pled no contest.  You were found guilty as a result of your no
> contest plea and you were put on probation for this case and it is
> a battery conviction . . . .

Id. at 9-11.  Mr. Hooks then stated, "See, I don't remember being put on
probation, that's what I'm saying.  That's the only reason why I think it was
dismissed."  The court concluded entry 16 was valid.  Id.

had "argued Hooks believed" his history score was an F and that the plea agreement contemplated a score of F and sentence of 52 months. Neither the written plea agreement nor the transcript of the plea proceeding indicates petitioner was promised a sentence of 52 months or less. The record refutes, rather than supports petitioner's bald statement as to the advice he received from counsel. At the beginning of the hearing on defendant's objections to the presentence investigation report, Mr. Sylvester stated:

> The State has provided me just now with certified copies of the journal entries for the batteries and for the burglary. Mr. Hooks has told me that he does not remember having any battery convictions at all and the burglary he understood was reduced to a misdemeanor.

T.Sent. at 2-3. Arguing on the record for a downward departure, Mr. Sylvester informed the court he had

> talked to (Mr. Hooks) just the other day and he didn't remember these things, thought he didn't have them, thought the burglary was a misdemeanor, thought the criminal threat had been misdemeanor, doesn't remember his batteries. So, anyway, certainly in his mind what he was pleading to (was not the kind of sentence they were looking at).

Id. at 16. The record also shows the prosecutor argued, in opposition to petitioner's motion for a downward departure, that Mr. Hooks' criminal history score without the bundling of three of his several misdemeanor batteries was B, not F. Mr. Sylvester contended, "it's unfortunate that misdemeanors are combined to boot them up to the A scoring from the B." Id. at 17.

Obviously, a nearly-tripled sentence from 52 months to 154

months is a significant increase that, standing alone, could suggest prejudice. However, the court concludes from the record that the bundling of three misdemeanors did not "greatly enhance" Mr. Hooks's criminal history score as he claims, and that the significant disparity he presents was due to his unreasonably held belief that his criminal history either was not significant or would not be used. Petitioner was informed by his counsel and in the plea agreement that his sentence would be determined based upon his criminal history score and his offense severity level.

Moreover, petitioner does not allege facts indicating any of the prior offenses that made up his criminal history score were erroneously counted by the trial court. He basically contends that he was improperly sentenced to more than 52 months because he believed he would receive a sentence of 52 months.

The plea agreement was proffered on a morning during trial, and accepted by Mr. Hooks that day. Preparation of a presentence investigation report is mandated under Kansas law, but apparently not until after trial. Such is the case in federal criminal proceedings as well. See Booker, 543 U.S. at 223. In Booker, the Supreme Court recognized this fact and preserved the sentencing judge's authority to rely upon the presentence report "for relevant factual information uncovered after trial." Id. Although the better practice might have been for trial counsel to make at least a cursory examination of his client's criminal history prior to

advising the entry of a plea, the court is aware of no Supreme Court precedent holding that counsel is constitutionally ineffective for not having done so.

Before this court, Mr. Hooks does not allege that Mr. Sylvester falsely represented to him that the prosecutor promised a specific sentence in exchange for petitioner's acceptance of the plea agreement. Nor does he suggest that his counsel otherwise gave advice in bad faith, or that counsel made unfair representations concerning the judge's probable leniency.

The purpose of the effective assistance guarantee of the Sixth Amendment is to ensure that criminal defendants receive a fair trial so that the outcome of the proceeding can be relied upon as the result of a proper adversarial process." Strickland, 466 U.S. at 691-92. Petitioner does not allege any instances of ineffective assistance other than the conclusory allegation of mistaken advice as to his criminal history and sentence length on the day he went from being in trial to having accepted a plea agreement. The record shows that Mr. Hooks himself stated at the plea proceeding that he had consulted with counsel and was satisfied with the assistance he had received. This court's own review of the record reveals that counsel competently conducted pretrial and trial proceedings, and filed pertinent motions and made arguments on petitioner's behalf.

The court emphasizes that the trial court advised Mr. Hooks

prior to accepting his plea that he could be sentenced to a term of incarceration ranging from 38 to 172 months on the aggravated battery charge alone. Thus, petitioner was correctly informed of the minimum and maximum penalties for his offenses before he pleaded no contest. The judge also asked whether there had been promises to induce his plea, which Mr. Hooks denied. "This colloquy between a judge and a defendant before accepting a guilty plea is not pro forma and without legal significance . . . . Rather, it is an important safeguard that protects defendants from incompetent counsel or misunderstandings . . . . At these colloques (sic), judges take the time to insure that defendants understand the consequences of a guilty plea." See Fields, 277 F.3d at 1214. Had Mr. Hooks believed he was guaranteed a certain sentence in exchange for his plea that was much less than the maximum the court advised it could impose, he could and should have exposed that guarantee during this colloquy. Id.

Under the Supreme Court's general legal framework in Strickland and Hill, this court has assessed counsel's overall performance and the specific claims of attorney error. The court finds Mr. Hooks has not alleged facts sufficient to overcome the presumption that his counsel rendered reasonable professional assistance. Furthermore, based upon the Supreme Court's other decisions and controlling Tenth Circuit authority discussed earlier suggesting tolerance for a good-faith miscalculation by competent

counsel, this court finds that even if counsel's advice was erroneous or counsel "failed to conduct an independent investigation into [petitioner's] criminal history", his conduct "does not rise to the level of ineffective assistance of counsel." See McMann, 397 U.S. at 770; Rhodes, 913 F.3d at 844; Gordon, 4 F.3d at 1570. Accordingly, the court concludes that Mr. Hooks has not satisfied the performance prong of Strickland, and that the KCA's decision to that effect was not objectively unreasonable.

Even if petitioner had alleged sufficient facts showing his counsel's performance was constitutionally deficient, he has not shown that the state court's adjudication regarding the prejudice prong was an unreasonable application of Strickland and Hill. As previously noted, petitioner is required to show there was a reasonable probability that, but for counsel's alleged errors, he would not have pleaded no contest and would have insisted on going to trial.

Mr. Hooks alleges before this court: "there is no doubt but for counsel's errors (he) would not have pleaded guilty (sic), and would have continued with his trial." He quotes his counsel's statement at sentencing that his client would not have pleaded no contest had he known his criminal history score was A. He also asserts his agreement to plead was "not due to the state presenting overwhelming evidence of guilt" and suggests the jury might have found him not guilty.

The KCA concluded "Hooks has failed to show a reasonable likelihood that he was prejudiced." <u>Hooks</u>, 191 P.3d 362, at *3. This holding was based on their finding, which is supported by the record, that "at sentencing, Hooks acknowledged if it takes me going through prison for 166 or 77 months, you know, if that's what I have to do I guess I have to do that.'" <u>Id</u>. The KCA reasoned it was unlikely "Hooks would have insisted on going to trial had he known his history score would expose him to 154 months in prison when he was already willing to accept a plea that exposed him to 172 months." <u>Id</u>.

Other statements by petitioner's counsel establish, contrary to Hooks' allegation, that the State's trial evidence had some influence on petitioner's decision. At the plea proceeding, Mr. Sylvester recounted that the prosecutor had asked him that morning if his client still wanted "to take that concurrent", which he "took as a joke" but said he would tell his client; he told Mr. Hooks "and that's when he indicated to me he did want to take a plea." <u>Plea Transcript</u> at 3. Sylvester additionally stated "we talked . . . . I think it's a thoughtful decision, he's evaluated the testimony of (two witnesses) . . . . We have discussed what closing is going to be, what the argument is, and . . . that there is a defense to at least a portion of the time." <u>Id</u>. Counsel continued that Hooks' "well-reasoned" concern is "under aiding and abetting" he can be construed as being in the fight. Counsel also

stated he had "not counseled him to plead or counseled him not to plead," and was "as surprised as anyone else this morning." Id. 3-4. The State added there had been plea negotiations prior to trial offering to dismiss the cocaine charge in exchange for a guilty plea to aggravated battery, which Hooks turned down; and that once trial started the defense asked about the prior offer, but the State turned it down and offered instead to run the cocaine sentence concurrently for a guilty plea to both counts. Id. at 4. Thus, the State contended defense counsel "had talked to his client numerous times about the different pleas." The court finds Mr. Hooks' claim that he would have insisted on completing the trial but for counsel's erroneous advice is contravened by the record.

While the court sympathizes with a defendant who may have received inaccurate criminal history or sentence information from his counsel[9] prior to entering a plea, the limited question on habeas review is whether the state court's adjudication of this claim was an unreasonable application of established federal law. 28 U.S.C. § 2254(d)(1). For the foregoing reasons, the court concludes the KCA decision that Mr. Hooks failed to show prejudice from the alleged ineffective assistance of counsel was not objectively unreasonable.

In sum, the court finds that the state court's adjudication of

_____

[9]      The legal standard governing review of Mr. Hook's petition is narrow and the court is mindful of the fact that "an unreasonable application of federal law is different from an incorrect or erroneous application of federal law." Williams, 529 U.S. at 412.

petitioner's <u>Apprendi</u> claim and his challenges to state post-conviction procedures were in accord with, rather than contrary to, clearly established federal law.  The court also finds that the state court's adjudication of petitioner's claim of ineffective assistance of counsel was not an unreasonable application of <u>Strickland</u> and <u>Hill</u> or any other controlling federal law.  The court concludes Mr. Hooks is not entitled to relief under § 2254, and his petition should be denied.

**IT IS THEREFORE ORDERED BY THE COURT** that Mr. Hooks' petition for a writ of habeas corpus pursuant to § 2254 (Doc. 1) is denied.

**IT IS SO ORDERED.**

Dated this 17th day of November, 2009, at Kansas City, Kansas.

<u>s/JOHN W. LUNGSTRUM</u>
United States District Judge